IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA JEAN STUBBS, f/k/a Barbara Stubbs Gill, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 3:20-CV-519-WKW [WO] |
| PARCEL 1, *etc.*, *et al.*, | ) ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

On June 22, 2020, Barbara Jean Stubbs ("Plaintiff"), an Alabama citizen, filed a complaint in the Circuit Court of Lee County, Alabama, seeking to quiet title to a piece of property described as "Parcel 1." (Doc. # 1-1.) The complaint describes Parcel 1 as "Lot Eleven (11) Phase III, Rock Island Landing Subdivision, according to plat of said subdivision prepared by Thomas L. French Jr., on June 24, 1985, and recorded in the Office of the Judge of Probate of Lee County, Alabama in Plat Book 11 at Page 199." (Doc. # 1-1, at 3.) Plaintiff names the following entities and individuals as Defendants in her quiet title action: (1) SPMCA Corporation ("SPMCA"), a Washington citizen; (2) ELM Leasing, LLC ("ELM"), a Mississippi citizen; (3) Georgia Power Company ("Georgia Power"), a Georgia citizen; (4) Kaufman & Forman, P.C. ("K & F"), a Georgia citizen; (5) Ten Talents Ministry,

an Integrated Auxiliary Chapter of the International Academy of Lymphology, a citizen of Georgia and Utah; (6) Sandra L. Gibbs ("Gibbs"), Joseph McKinnes ("McKinnes"), Zachary Thomas ("Mr. Thomas"), and Tammy Thomas ("Ms. Thomas"), all Alabama citizens; (7) John Gill ("Gill"), both individually and as trustee for IAL; (8) BillPay Processing of Georgia, LLC ("BillPay"), a Georgia citizen; and (9) Eastern Property Development, LLC ("EPD"), a Utah citizen.

On July 24, 2020, K & F removed the case to federal court based on diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1441, and 1446(b)(3). Among other things, it contends that the non-diverse Defendants—Gibbs, McKinnes, Mr. Thomas, and Ms. Thomas (collectively "Judgment Creditors")—were fraudulently joined to defeat federal-diversity jurisdiction.

Now before the court are two competing motions: Plaintiff's Motion to Remand, as supplemented (Docs. # 11, 20), and K & F's Motion to Transfer Venue, as supplemented (Docs. # 10, 21). Given that "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings," the motion to remand will be addressed first. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see also* 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3843, n.2 (4th ed. 2018) ("When presented with competing motions to remand a case to state court and to transfer venue, a court will consider the remand motion first and then address transfer only

if it denies the motion to remand."). In short, Plaintiff's motion to remand is due to be granted because K & F has not met its "heavy burden" of proving that Plaintiff fraudulently joined the Judgment Creditors. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Accordingly, the motion to transfer will not be addressed.

## II.  STANDARD OF REVIEW

An action is removable if the joinder of a non-diverse party is fraudulent. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The presence of a fraudulently joined, non-diverse defendant does not defeat diversity jurisdiction because where the joinder is fraudulent, the court "must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007). Generally, Fraudulent joinder exists in three situations: (1) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; (2) "when there is outright fraud in the plaintiff's pleading of jurisdictional facts"; or (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287.[1]

---

[1] Because K & F's fraudulent joinder argument does not involve claims that Plaintiff engaged in "outright fraud" concerning the pleading of her jurisdictional facts, the following discussion is limited to the first and third situations outlined in *Triggs*.

Regarding the first type of fraudulent joinder, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (quotations omitted). That possibility, however, must be "reasonable, not merely theoretical." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005).

The removing party bears the burden of proving fraudulent joinder by "clear and convincing evidence," and the burden is "'a heavy one.'" *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (quoting *Crowe*, 113 F.3d at 1538). A court examines fraudulent joinder based on the plaintiff's pleadings at the time of removal, but it also "may consider affidavits or deposition transcripts submitted by the parties." *Id.*; *see also Legg*, 428 F.3d at 1324. Additionally, the court "draw[s] all reasonable inferences from the record in the plaintiff's favor and then resolve[s] all contested issues of fact in favor of the plaintiff." *Crowe*, 113 F.3d at 1541–42. In this way, the inquiry resembles that required on a motion for summary judgment; however, the inquiry differs in that the court may not "weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.* at 1538. In other words, "there need only be 'a reasonable basis for predicting that the state law might impose liability on the facts involved.'" *Id.* at 1542 (citation and internal quotation marks omitted).

## III.  BACKGROUND

### A.  <u>History Surrounding Parcel 1</u>

This story begins in April 1994 when Patrick Araguel Jr. transferred his interest in Parcel 1 to Corporate Services Inc. N.W. ("Corporate Services"). (Doc. # 1-1, at 14.)  More than six years later, on December 15, 2000, Gill, as executive officer and fiduciary of Corporate Services, conveyed an interest in Parcel 1 to Rev. Dr. Kerry Smith, trustee and fiduciary for the Order of the International Academy of Lymphology, an unincorporated association.  (Doc. # 1-1, at 15.)  That same day, Smith conveyed an interest in Parcel 1 by quitclaim deed to Ten Talents Ministry Integrated Chapter of the International Academy of Lymphology ("Ten Talents"), also an unincorporated association.  (Doc. # 1-1, at 16.)  Following that transaction, yet another conveyance took place on December 15, 2000—Gill, as executive director, minister, and fiduciary for Ten Talents, transferred an interest in Parcel 1 to the 402 River Oak Commercial Real Estate Holding Trust ("River Oak Trust"). (Doc. # 1-1, at 17.)

The plot thickened in June 2011, when Parcel 1 became one of many properties subject to federal litigation before Judge Clay D. Land in the United States District Court for the Middle District of Georgia.  Judge Land described the dispute as follows:

> This action is the third in a series of civil cases before this Court involving the same main characters fighting over the Gill Family

5

> Cornerstone Trust enterprise, built by John Gill. Before the fighting began, John Gill amassed an empire of rental properties, took a vow of poverty, placed the properties into holding trusts that benefitted the Cornerstone Trust, and continued to manage the properties . . . with the help of Kevin Hartshorn and Dan Van Gasken. But then John Gill was convicted of crimes in Florida, and he fled the country instead of reporting to prison. The power vacuum created by John Gill's absence pitted Hartshorn and Van Gasken against John Gill's brother Loren. They have been fighting in this Court ever since . . . .

*S. E. Enter. Group, LLC v. Gill*, No. 4:15-cv-25-CDL, 2015 WL 3465934, at *1 (M.D. Ga. May 29, 2015). Alas, the fighting continues. Ultimately, Judge Land approved a settlement agreement reached by the parties and issued a permanent injunction ordering them to take certain actions regarding the various properties, including Parcel 1, involved in the case. *See S. E. Enter. Group, LLC v. Gill*, No. 4:15-cv-25-CDL (M.D. Ga. Mar. 15, 2016), ECF No. 138. On November 17, 2017, pursuant to the permanent injunction, Corporate Services and Dan Van Gasken, as trustee of the River Oak Trust, conveyed Parcel 1 to SPMCA by quit claim deed. (Doc. # 1-1, at 18.)

### B. Plaintiff's Interest in Parcel 1

On November 16, 2002, Plaintiff and Gill married. (Doc. # 1-1, at 3.) Nearly seventeen years later, on August 20, 2019, they divorced. According to Plaintiff, her interest in Parcel 1 stems from the fact that the property served as the marital home during the time that she and Gill were married, and that she was awarded Parcel 1 pursuant to a default judgment of divorce issued by the Circuit Court of Lee

6

County, Alabama. (Doc. # 1-1, at 24–25.) The default judgment of divorce provided that Parcel 1 was marital property "because it was used regularly for the common benefit of the [Plaintiff and Gill] during the marriage." (Doc. # 1-1, at 24.) The default judgement of divorce further found that:

> [Gill] may have placed some or all the above listed properties in various trusts, business [sic], or churches; however, evidence shows these items were regularly, and in some cases exclusively, used in the course of the marriage as marital property. The evidence further demonstrates that these various entities were aware of the use of these items as marital property. Moreover, evidence shows that after separation of the parties, [Plaintiff] expended personal funds to repair and maintain these properties. The Court hereby awards Plaintiff the marital interest in [Parcel 1]. To the extent that the Defendant, [Gill], has any ownership interest of any type in [Parcel 1], said interest is hereby awarded to [Plaintiff]. The Court hereby orders [Gill], to either directly or by and through his agent(s), employee(s), business entity(ies), or trustee(s) to transfer all of his interest, whether direct or indirect, legal or beneficial of whatever kind or nature in [Parcel 1] to [Plaintiff] within sixty (60) days of the entry of this Order.

(Doc. # 1-1, at 25–26.) Plaintiff alleges that she "has been in actual, peaceable possession of Parcel 1" since 2002. (Doc. # 1-1, at 4.)

## C. Defendants Sandra Gibbs's, Joseph McKinnes's, Zachary Thomas's, and Tammy Thomas's Interest in Parcel 1 as Judgment Creditors

Plaintiff names Gibbs, McKinnes, Mr. Thomas, and Ms. Thomas as Defendants in her quiet title action given their alleged status as judgment creditors in relation to Parcel 1. To support the contention that the above-named Defendants are judgment creditors, Plaintiff relies on two pieces of evidence.

First, she submits a final judgment issued on November 6, 2007, by the Circuit Court of Montgomery County, Alabama in a case styled *Sandra L. Gibbs, et al. v. Victory Crossing, LLC, and John Gill*, 03-CV-99-2273.  (Doc. # 37-4.)  The final judgment reads:

> [T]he Plaintiffs have established that the members of the Rule 23(b)(2) Class previously certified by this Court are due a monetary judgment in the sum of $1,914,000.00 . . . against Defendants Victory Crossing, LLC and John Gill, who is also known as John Allen Gill, Junior. Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that . . . a FINAL JUDGEMNT in favor of the Plaintiff Class in this action is rendered against Defendant Victory Crossing, LLC, and against Defendant John Gill . . . in the amount of $1,914,000.00 . . . as well as all court costs, for which each are jointly and severally liable.

(Doc. # 37-4.)  Second, Plaintiff submits a certificate of judgment filed on January 16, 2008, in the Office of the Probate Court of Lee County, Alabama.  (Doc. # 37-5.)  The certificate of judgment reflects that the Judgment Creditors, all of whom were members of the state court class action, recovered a money judgment in the amount of $1,914,000.00 from Gill. Based on the final judgment and certificate of judgment, Plaintiff asserts that Gibbs, McKinnes, Mr. Thomas, and Ms. Thomas established a lien against Parcel 1, thus making them judgment creditors under Alabama law.

## IV. DISCUSSION

As mentioned above, K & F contends that the Alabama citizenship of the Judgment Creditors[2] should not be considered in determining whether diversity jurisdiction exists because Plaintiff fraudulently joined them. K & F's argument goes like this:

> Sandra L. Gibbs, Zachary Thomas, Tammy Thomas, and Joseph McKinnes were fraudulently joined because their interest [in Parcel 1] depends on John Gill having a personal interest in the land, which he has not had at any time, much less at any time post Judgment, and because they never attempted to enforce their judgment against the land before it was transferred to a party holding priority under the law.

(Doc. # 33, at 5.) K & F's argument is unavailing because K & F has failed to meet its heavy burden of proving, by clear and convincing evidence, that Plaintiff's quiet title action against the Judgment Creditors has no reasonable possibility of success in state court.[3]

---

[2] While K & F initially alleged in its notice of removal that the Judgment Creditors were "by information and belief, domiciled in the State of Georgia," (Doc. # 1, at 4), the record indicates that it has abandoned that allegation. Specifically, at the time of removal, Plaintiff had yet to perfect service on any of the Judgment Creditors. However, since removal, Plaintiff has served each of the Judgment Creditors at addresses located within Alabama, (*see* Doc. # 20-2), and nowhere in the parties' briefs do they dispute that the Judgment Creditors are Alabama citizens. In fact, K & F's argument that Plaintiff fraudulently joined the Judgment Creditors is a concession that the Judgment Creditors are Alabama citizens for diversity jurisdiction purposes.

[3] Because Plaintiff did not fraudulently join the Judgment Creditors, the court need not and declines to decide whether Gill, who is still a fugitive from justice believed to be living in Mexico, has established citizenship in a foreign state.

9

The Alabama Supreme Court has held that a plaintiff enjoys the right to quiet title provided that:

> (1) [she] is in peaceable possession of the land, whether actual or constructive, claiming to own the same in [her] own right, or in a representative capacity; (2) . . . [her] claim is denied or disputed or when any other person claims or is *reputed* to own the same or any part thereof; and (3) no suit is pending to enforce or test the validity of such title or claim.

*Gill v. Moore*, 76 So. 453, 459 (Ala. 1917) (emphasis added); *see also* TILLEY'S ALABAMA EQUITY § 13:3 (5th ed. 2020) (listing the elements a plaintiff must prove in a quiet title action under Alabama law). Moreover, Alabama Code § 6-6-650, the statute governing quiet title actions, allows a plaintiff to bring a quiet title claim "against . . . any and all persons claiming, *or reputed to claim*, any . . . *lien*" on the piece of property at issue in order "to clear up doubts or disputes concerning the same." (emphasis added). Thus, the question becomes whether there is a reasonable possibility that the Judgment Creditors could establish a lien on Parcel 1.

To establish a judgment lien under Alabama law, an owner of a judgment must comply with the requirements outlined in Alabama Code § 6-9-210.[4] Provided that

---

[4] In pertinent part, § 6-9-210 reads:

> The owner of any judgment entered in any court of this state or of the United States held in this state may file in the office of the judge of probate of any county of this state a certificate of the clerk or register of the court by which the judgment was entered, which certificate shall show the style of the court which entered the judgment, the amount and date thereof, the amount of costs, the names of all parties thereto and the name of the plaintiff's attorney and shall be registered by the judge of probate in a book to be kept by him

10

the owner of a judgment fulfills the requirements listed in § 6-9-210, "[e]very judgment . . . shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution, and such lien shall continue for 10 years after the date of such judgment." Ala. Code § 6-9-211. Further, "[i]f 10 years have elapsed from the entry of the judgment without issue of execution or if 10 years have elapsed since the date of the last execution issued, the judgment must be presumed satisfied, and the burden of proving it is not satisfied is upon the plaintiff." Ala. Code § 6-9-191. Section 6-9-191 "establishes a rebuttable presumption" that the defendant has satisfied the judgment. *Johns v. Johns*, 291 So. 3d 505, 508 (Ala. Civ. App. 2019).

Importantly, however, a judgment that has been presumed satisfied due to a plaintiff's failure to execute on it is subject to renewal within twenty years from the entry of the original judgment. *See* Ala. Code § 6-9-190 ("A judgment cannot be revived after the lapse of 20 years from its entry."); Ala. Code § 6-9-192 ("No execution shall issue on a judgment of the district or circuit court on which an execution has not been sued out within 10 years of its entry until the same has been revived by appropriate motion or action under the Alabama Rules of Civil Procedure."). Once an Alabama state court revives a judgment otherwise presumed

---

for that purpose, which said register shall also show the date of the filing of the judgment.

11

satisfied, "[t]he order to revive does no more than reinvest the [judgment creditor] with the right to have execution of his original judgment." *Davis Int'l., Inc. ex rel. Patel v. Berryman*, 730 So. 2d 242, 244 (Ala. Civ. App. 1999) (quotations and citation omitted) (first alteration added).

Here, it is undisputed that on November 6, 2007, the Circuit Court of Montgomery County, Alabama entered a final judgment in favor of the Judgment Creditors against Gill. (Doc. # 37-4.) It is also undisputed that on January 16, 2008, the Judgment Creditors recorded their final judgment in the Office of the Probate Court of Lee County, Alabama. (Doc. # 37-5.)[5] Once the Judgment Creditors filed the certificate of judgment, they created "a blanket lien on all of the property" that Gill owned located in Lee County, Alabama, which arguably included Parcel 1.[6] *Smith v. Arrow Transp. Co.*, 571 So. 2d 1003, 1006 (Ala. 1990). True, ten years

---

[5] While K & F is silent on this issue, it is worth noting that the certificate of judgment only references Sandra Gibbs as a plaintiff in the underlying state court action. The document does not mention McKinnes, Mr. Thomas, or Ms. Thomas. However, the certificate of judgment does bear the same case number and monetary award as the underlying final judgment issued in state court. Given the matching case number and monetary award, the court need not address how the lack of an express reference to McKinnes, Mr. Thomas, and Ms. Thomas in the certificate of judgment might impact their status as judgment creditors.

[6] Plaintiff and K & F dispute whether Gill possessed an interest in Parcel 1 prior to the Judgment Creditors filing their certificate of judgment on January 16, 2008. Keeping in mind that at this stage the court "draw[s] all reasonable inferences from the record in the plaintiff's favor and then resolve[s] all contested issues of fact in favor of the plaintiff," there is at least a reasonable possibility that Gill possessed an interest in Parcel 1 at the time the Judgment Creditors filed their certificate of judgment. *Crowe*, 113 F.3d at 1541–42. For instance, it is undisputed that Parcel 1 served as Plaintiff's and Gill's marital home at the time the Judgment Creditors filed their certificate of judgment, suggesting that Gill did possess an interest in the property to which the lien could attach.

have passed since the entry of judgment without execution, but the judgment remains subject to renewal until November 6, 2027. *See* Ala. Code § 6-9-190. In other words, the Judgment Creditors could, at any time until November 6, 2027, revive their judgment lien on Parcel 1, thus casting doubt on who possesses title to the property. In light of the uncertainty created by such a scenario—the exact kind of uncertainty that Alabama's quiet title statute is designed to address—it makes sense why Plaintiff named the Judgment Creditors as defendants in this case. Based on the Judgment Creditors' compliance with the statutory provisions governing the creation of liens and the fact that their original judgment is subject to renewal until November 6, 2027, there is at least a reasonable possibility that an Alabama state court would find that Plaintiff's complaint states a quiet title cause of action against the Judgment Creditors.

K & F argues that the Judgment Creditors' failure to execute on their lien during the ten-year period prescribed by Ala. Code § 6-9-211, combined with the two subsequent court orders[7] concerning Parcel 1, extinguished their right to claim a lien on the property. (Doc. # 33, at 7.) Specifically, K & F contends that both SPMCA and Plaintiff took priority status over the Judgment Creditors pursuant to

---

[7] *See South East Enterprise Group, et al. v. Gill, et al.*, No. 4:15-cv-25-CDL (M.D. Ga. Mar. 15, 2016), ECF No. 138 (ordering Corporate Services and Dan Van Gasken, as trustee of the River Oak Trust, to convey Parcel 1 to SPMCA); (Doc. # 1-1, at 24–25 (default judgment of divorce ordering Gill to transfer his interest in Parcel 1 to Plaintiff).)

the respective court orders. This argument misses the mark because the Judgment Creditors' rights in Parcel 1 attached after they recorded their certificate of judgment and their rights in the property had "priority over all rights arising out of subsequently recorded instruments." *Smith*, 571 So. 2d at 1006. And given that any revival of the judgment lien would "reinvest" the Judgment Creditors with the right to execute the original judgment, *see Davis Int'l., Inc. ex rel. Patel*, 730 So. 2d at 245, it stands to reason that they would also enjoy priority status over both Plaintiff and SPMCA.

Additionally, K & F contends that "it is improper to modify a valid property settlement later than thirty days after the divorce decree has been issued." (Doc. # 33, at 9 (quoting *Ex parte Smith*, 429 So. 2d 1050, 1052 (Ala. 1983).) Thus, according to K & F, if the Judgment Creditors wanted to revive their judgment lien on Parcel 1, they should have done so within thirty days of the Circuit Court of Lee County, Alabama issuing its default judgment of divorce. Despite K & F's contentions, *Ex parte Smith* is readily distinguishable from the case at bar.

In *Ex parte Smith*, the Alabama Supreme Court held that the parties to a divorce decree could not modify the terms of the decree by subsequent agreement between themselves. *Ex parte Smith*, 429 So. 2d at 1052. Unlike *Ex parte Smith*, the Judgment Creditors are not parties to the divorce decree between Plaintiff and Gill. Put differently, the divorce decree does not settle the rights and obligations of

the Judgment Creditors as it relates to Parcel 1. Further distinguishing *Ex Parte Smith* is the fact that the Judgment Creditors' asserted interest in Parcel 1 does not arise from an agreement reached after the entry of the divorce decree between Plaintiff and Gill. Rather, their interest flows from a certificate of judgment filed more than eleven years prior to the entry of the divorce decree.

Finally, to the extent that K & F asserts that Plaintiff fraudulently joined the Judgment Creditors under the third scenario outlined in *Triggs*, that argument also fails. Specifically, K & F has not established that the claim brought against the Judgment Creditors has no real connection with the claim brought against the other Defendants. Indeed, the claim against the Judgment Creditors is inextricably intertwined with the claim against the other Defendants insofar as Plaintiff's quiet title action seeks to settle the respective interests of all Defendants in the same piece of property—Parcel 1.

## V. CONCLUSION

Plaintiff did not fraudulently join the Judgment Creditors because there is at least a reasonable possibility that an Alabama state court would find that the complaint states a quiet title cause of action against the Judgment Creditors. As a result, the Alabama citizenship of the Judgment Creditors must be considered. When so considered, complete diversity does not exist. While the motion to remand is due to be granted on this basis alone, another important consideration also counsels in

favor of remand—Plaintiff's quiet title action turns on questions of Alabama property law and "such [questions are] emphatically [matters] for state courts to decide." *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1282 (11th Cir. 2006) (citation omitted) (alterations added).

Accordingly, it is ORDERED that Plaintiff's motion to remand, as supplemented (Docs. # 11, 20), is GRANTED.

The Clerk of the Court is DIRECTED to take the action necessary to accomplish the remand of this case to the Circuit Court of Lee County, Alabama.

DONE this 27th day of January, 2021.

/s/ W. Keith Watkins<br>UNITED STATES DISTRICT JUDGE